Weygandt, C. J.
The question in this case is not whether there was an overpayment of sales tax. / Bather, the problem is whether the appellant may recover the $5,463.39 that was overpaid.
The controlling facts are simple and not in dispute.
The Columbus Southern Development Company was engaged in the construction of a large housing project in the city of Columbus. The company entered into a written contract to purchase all needed lumber and certain other building materials from the appellant lumber company. It was agreed that the appellant would allow the construction company the usual contractor’s trade discount in the amount of 10 per cent of the retail list price, bio difficulty arises from that fact.
This entire controversy results from a further provision in the contract that the appellant would allow the construction company a second discount of 10 per cent of the retail list price if the total of such purchases should reach a minimum of $900,000. When materials were ordered, an invoice was prepared by the appellant showing a discount of 10 per cent, and such invoice accompanied the delivery. Each invoice also disclosed the amount of sales tax on 90 per cent of the list price, and canceled prepaid tax receipts therefor were attached to the invoice. These were duly paid- by the construction company.
Eventually the total list price of the purchases *566 reached the sum of $900,000. Under the written contract this fact entitled the construction company to a discount of 20 instead of 10 per cent. The lumber company then recomputed the account and credited the construction company accordingly, showing the resulting overpayment of sales tax. Thereafter the appellant lumber company filed the application with the Tax Commissioner for a refund of the $5,463.39 overpayment.
The Tax Commissioner urges three reasons for his refusal to return the overpayment to the lumber company.
The first is that the appellant lumber company has not returned to the construction company the $5,463.39 received from it, as provided by Section 5546-8, General Code. This is true. However, this fact is unimportant under the instant circumstances. The commissioner properly insists that the lumber company is not entitled to be reimbursed twice for the sales tax — once from the construction company and again from the state. But the lumber company makes no such contention. It agrees that it owes this amount to the construction company, and the latter has, for some reason, agreed to await its repayment until final determination of the lumber company’s application. That the lumber company is indebted to the construction company for this amount would, under these circumstances, seem to be of no greater consequence than if the money had been borrowed from a bank. The lumber company canceled the stamps and made the payment to the state. Hence, it would seem that the application should be made by the latter company as the immediate party to the transaction with the state. In obtaining payment of the tax, the state held this company liable irrespective of whether it was reimbursed therefor by the construction company. Furthermore, the statute would be given an invalid effect *567 if construed to permit the state to refuse the return of money belonging not to it but to the appellant who, of course, must reimburse the purchaser. Should the commissioner wish to make certain of the reimbursement to the contractor, he can require the lumber company to produce a receipt therefor.
The Tax Commissioner’s second reason for his refusal to return the overpayment is that the payment, if “erroneously paid” under the terms of Section 5546-8, General Code, was made under a mistake of law and hence is not recoverable. What mistake of law? Each party correctly understood that, as a matter of law, the tax would be three per cent of the actual price. At the time the earlier purchases were made, it was not known that the total would reach $900,000. Hence, they followed the honest course of computing and paying the tax on the basis of 90 per cent of the list price, thereby avoiding the danger of criminal prosecution. Then when they found that in fact the total reached $900,000, they, of course, recomputed the tax on the basis of 80 instead of 90 per cent of the list price. This disclosed an overpayment of $5,463.39. Clearly the overpayment was made “erroneously” under a mistake of fact and not of law, and the refund can not be denied on this theory.
Einally, the commissioner contends that under the provisions of Section 5546-1, General Code, and rule 50, promulgated by the commissioner, the price in the instant transaction must be considered to be 90 rather than 80 per cent of the list price.
This statute reads in part :
“ ‘Price’ means the aggregate value in money of any thing or things paid or delivered, or promised to be paid or delivered by a consumer to a vendor in the consummation and complete performance of a retail sale without any deduction therefrom on account of * * * discount paid, or allowed after the sale is con *568 summated * * *. ‘Price’ shall be deemed to be the amount received exclusive of the tax hereby imposed provided the vendor shall establish to the satisfaction of the Tax Commissioner that the tax was added to the price.”
Rule 50 reads in part:
“Discounts which are allowed after the sale is made or upon the happening of an event at some future time, such as cash discounts, are not deductible in determining the tax base for sales tax liability.”
In construing these provisions it should be recalled that in the first paragraph of the syllabus in the case of Phoenix Amusement Co. v. Glander, Tax Commr., 148 Ohio St., 592, 76 N. E. (2d), 605, 175 A. L. R., 1096, this court held:
“1. Statutory provisions for the refund of taxes illegally or erroneously paid or paid on an illegal or erroneous assessment should be liberally construed in favor of the taxpayer.”
It is to be observed that the above-quoted portion of the statute provides two definitions of the word “price.” One is that “ ‘price’ shall be deemed to be the amount received exclusive of the tax hereby imposed. ” Here the amount received is the 80 per cent of the list price. The other definition is that “ ‘price’ means the aggregate value in money * * * to be paid * * * by a consumer to a vendor in the consummation and complete performance of a retail sale without any deduction therefrom on account of * * * discount paid, or allowed after the sale is consummated.” The commissioner contends that here each sale was consummated with the delivery of each installment of material. This court does not so read this contract. It provides for a simple, continuing transaction which by its express terms could not attain its “consummation and complete performance ’ ’ until the last material was purchased and the computation made to determine whether *569 the required total of $900,000 had been reached. Until then no one knew the price of any of the material, i. e., whether it would be 90 or only 80 per cent of the list-price.
To test the correctness of this view, if the parties had reversed the process and had originally billed the materials at 80 per cent with the arrangement that the purchases would be rebilled at 90 per cent were the total of $900,000 not reached, can there be doubt that the commissioner would have been entitled to consider the transaction in its entirety and to collect the additional tax at the conclusion thereof.
Rule 50 seems to be at variance with the statute. In any event, it prohibits the deduction of discounts allowed after a sale is “made or upon the happening of an event at some future time,” while the statute prohibits the deduction of discounts only after the “consummation and complete performance” of the transaction. Hence, the rule is invalid to the extent that it is at variance with the statute.
The Board of Tax Appeals observed that it is without equitable jurisdiction and therefore unable to afford the appellant relief. It is true that the board does not have equitable jurisdiction, but this court does not share the view that the board is without statutory authority to refund to the appellant the overpayment it made to the state at a time when no one knew the ultimate price of the materials sold.
The decision of the Board of Tax Appeals is reversed.

Decision reversed.

Middleton, Matthias, Hart, Zimmerman and Stewart, JJ., concur.